IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CECIL'S ON-SITE PRODUCTS, INC., | § | |
| | § | |
|     Plaintiff / Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION V-06-98 |
| | § | |
| MARK N. CHAFFIN, | § | |
| | § | |
|     Defendant / Counter-Plaintiff. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is the parties' Joint Claim Construction Statement (Dkt. No. 20) wherein they identify certain disputed claim terms that they ask to be construed.

This is an action for a declaratory judgment brought by Cecil's On-Site Products, Inc. ("Cecil's") against Mark N. Chaffin ("Chaffin"). Chaffin is the owner of United States Patent Number 6,932,912 ("the '912 patent"). Cecil's asks the Court to declare that Chaffin's patent is invalid, alternatively that Cecil's has not infringed Chaffin's patent, or alternatively that Chaffin's patent is unenforceable. Dkt. No. 1. Chaffin has counterclaimed, alleging that Cecil's has infringed Chaffin's patent. Dkt. No. 9. The Court previously held a *Markman* hearing to help resolve the issues concerning the construction of the disputed claims of the '912 patent. *See* Dkt. No. 36 (transcript).

**THE PATENTED DEVICE**

The '912 patent is titled "Wastewater Treatment System for Residential Septic Systems" and describes a device for treating wastewater with liquid chlorine. *U.S. Patent No. 6,932,912* at col. 1, ll. 19-26. The device involves "a liquid recirculation system," a chlorine solution, "a venturi and metering orifice for limiting the proper dosage of chlorine solution," and efficient mixing of the

1

chlorine solution with the wastewater. *Id.*

## DISPUTED CLAIM TERMS

The '912 patent contains twenty-four claims. *Id.* at col. 7, l. 47 to col. 12, l. 44. Chaffin claims that Cecil's is infringing ten of these claims. Dkt. No. 21 at 2. Claim 7 is representative:

> A wastewater treatment system for septic systems, comprising:
>     a storage-mixing tank having an inlet for receiving sewage effluent from a source;
>     a pump located within said storage-mixing tank and having an inlet opening and a pump discharge in said storage-mixing tank;
>     a recirculation pipe within said storage-mixing tank receiving sewage effluent from said pump discharge and having a terminal end located within said storage-mixing tank and defining a recirculation discharge opening;
>     a chlorine supply canister having an internal volume adapted to contain a supply of chlorine; and
>     a venturi chamber in communication with said recirculation pipe;
>     a chlorine supply tube having a first end and a second end, said tube first end in communication with said venturi chamber and said tube second end in constant fluid communication with substantially the entire contained chlorine supply in said internal volume of said chlorine supply canister;
>     wherein as recirculating pumped sewage effluent flows through said venturi chamber, chlorine from said internal volume of said supply canister is continuously drawn into said venturi chamber and into said recirculation pipe.

*U.S. Patent No. 6,932,912* at col. 8, ll. 29-56.

There are five claim terms that the Court must construe. *See* Dkt. No. 20. Three of the disputed terms are found in the above-quoted claim: (1) "venturi chamber;" (2) "recirculation pipe;" and (3) "in constant fluid communication with substantially the entire contained chlorine supply." The fourth term, very similar to term (3) above, is found in Claim 22: (4) "in continuous communication with substantially the entire amount of chlorine." *Id.* at col. 12, ll. 26-27. Claim 20 contains the final term to be construed: (5) "the volume of chlorine drawn from the chlorine supply canister during a period of continuous sewage effluent recirculation varies with the duration period of continuous sewage effluent recirculation." *Id.* at col. 11, ll. 37-41.

## CLAIM CONSTRUCTION STANDARD

In *Markman v. Westview Instruments, Inc.*, the Supreme Court affirmed that the construction of patent claims is a matter of law exclusively for the court. 517 U.S. 370, 372 (1996). It is the court's job to decipher the meaning of words and phrases in the patent claims without reference to the accused device. *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991) (claim construction must proceed "without regard to the accused product").

In interpreting patent claims, the court must first look to the "intrinsic" evidence, which is comprised of the patent's claims, specification and accompanying diagrams, and prosecution history. *Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1346 (Fed. Cir. 2003) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The court may look to "extrinsic" evidence, such as expert and inventor testimony or dictionaries, but it is considered to be of much lower value. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). While extrinsic evidence may be used, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.*

The starting point for claim interpretation is the language of the claims themselves. *See Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998). Terms in a patent claim are presumed to have their ordinary meaning, from the perspective of a hypothetical person of ordinary skill in the art at the time of the alleged invention. *See Pitney Bowes v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999) (citing *SmithKline Diagnostics v. Helena Lab. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988)). However, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition is clearly stated in the patent specification or file history." *Vitronics*, 90 F.3d at 1582. To determine this issue, the court must review the specification to determine whether the inventor explicitly defined any terms or used them in a manner inconsistent with their ordinary meaning. *Id.* "[W]here there

3

are several common meanings for a claim term, the patent disclosure serves to point away from the improper meanings and toward the proper meaning." *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

The court may also use a patent's prosecution history to determine the meaning of terms in the patent claims. The prosecution history consists of exchanges between the applicant and examiners from the United States Patent and Trademark Office about what the claims mean. *See Digital Biometrics*, 149 F.3d at 1344. During the prosecution of the patent, the applicant may define a term in the claims in a special way to satisfy the examiners' concerns. If so, the applicant is estopped from claiming that the court should construe the term differently during patent litigation. *See Vitronics*, 90 F.3d at 1582-83.

## ANALYSIS

### 1. "venturi chamber"

The parties included the phrase "venturi chamber" in their Joint Claim Construction Statement. Dkt. No. 20. Cecil's' Opening Claim Construction Brief, however, argued that no construction of the term was necessary because the term was not ambiguous. Dkt. No. 22, at 26. Chaffin, by contrast, proposed that "venturi chamber" means "a region in a tubular fluid pathway in which suction is produced due to a constriction." Cecil's, in its response, renewed its argument that "venturi chamber" need not be construed, but argued alternatively that Chaffin's construction is incorrect, and suggests instead that "venturi chamber" be construed as "a volume in which a significant drop in pressure relative to atmospheric pressure is caused by the flow of a liquid through that volume." Dkt. No. 26, at 21.

The Court agrees with Cecil's that "region" is ambiguous, and that "volume" is a better description of the venturi chamber in Chaffin's invention. As to the remainder of the construction, however, the difference appears to be in focus rather than a more fundamental disagreement.

4

Chaffin's construction focuses on the *actual effect* of the venturi chamber and the reason for its use: the creation of suction. Cecil's' construction focuses on the *means* by which that suction is created: a pressure drop. Cecil's' construction, however, omits the means by which the drop in pressure is created: a constriction in the pipe. Dictionary definitions of "venturi" typically include the concept of restriction: "A short tube with a constricted throat . . .," THE AMERICAN HERITAGE DICTIONARY 1982 (3d ed.); "a short tube with a tapering constriction in the middle that causes an increase in the velocity of flow of a fluid and a corresponding decrease in fluid pressure . . .," MERRIAM-WEBSTER'S COLLEGE DICTIONARY 1311 (10th ed.).

Thus, with the slight change from "region" to "volume," the Court adopts Chaffin's construction of "venturi chamber": "a volume in a tubular fluid pathway in which suction is produced due to a constriction."

**2. "recirculation pipe"**

The main point of contention between the parties on the construction of "recirculation pipe" is whether one end of the pipe must be submerged under wastewater effluent. Cecil's argues that it must be (Dkt. No. 22 at 38-45), while Chaffin posits that this is too narrow a reading, and puts forth a construction whereby the recirculation pipe is merely *somewhere* within the storage mixing tank. Dkt. No. 21 at 7-8.

This argument turns on the distinction between reading the claims of the patent in light of the specification, which the Court must do, and limiting the claims to the specification, which the Court must not do. *See Phillips*, 415 F.3d at 1317, 1323. In light of the admonition that it is the words of the claim that must be construed, the Court believes that Cecil's' construction is too narrow, importing limitations that do not belong to the claim. While the device may well be less efficient if the pipe is not submerged because the recirculation will not create the level of turbulence desired, this only means that the *preferred embodiment* contains a submerged recirculation pipe.

The claims themselves betray no hint that the recirculation pipe must be submerged.[1]

The construction put forth by Cecil's does, however, contain an element of specificity that the Court finds necessary. While Chaffin proposes the construction "a tubular fluid pathway for returning a fluid to a starting point," the Court believes that a variation of Cecil's proposed phrase, "having at least a section downstream from the venturi," is required for a proper construction of the term.

Thus, the Court construes "recirculation pipe" as follows: "a tubular fluid pathway for returning a fluid to a starting point, with at least a portion of that pathway being downstream from the venturi."

**3. "in constant fluid communication with substantially the entire contained chlorine supply"**

Chaffin narrows the third phrase to be construed from "in constant fluid communication with substantially the entire contained chlorine supply" to "in constant fluid communication," and argues that this latter means that the end of the tube that is in such communication "allow[s] liquid or gas access at all times." Dkt. No. 21 at 10. Cecil's argues, by contrast, that the entire phrase means "able to continuously draw chlorine from substantially the entire contained chlorine supply regardless of the duration period of continuous sewage effluent recirculation." Dkt. No. 22 at 38. The key point of differentiation between the two constructions, then, appears to be the additional phrase in Cecil's' construction: "regardless of the duration period of continuous sewage effluent recirculation." That is, there appears to be little distinction between the phrases "has access at all times" and "able to continuously draw." The question, then, is whether the Court ought to construe

---

[1] For instance, Claim 1 notes that turbulence is created by the *velocity* of discharge from the recirculation pipe, not the location of the pipe. Claim 1 further describes the recirculation pipe as "having a discharge opening within the mixing/storage tank," but not disclosing the precise location of that opening within the tank. Claims 7, 9, 10, 12, 16, 20, and 22 all state substantially the same thing as Claim 1 regarding the recirculation pipe, with Claim 20 again specifically mentioning "velocity" as the turbulence-causing agent.

the term to include Cecil's' additional limitation.

Cecil's' "regardless of the duration period" language is at worst a limitation not called for by the patent's claims and at best a mere repetition of the concept that access is allowed "constant[ly]" or "at all times" or "continuously." The Court, then, construes "in constant fluid communication with substantially the entire contained chlorine supply" to mean "allowing liquid or gas access at all times to substantially the entire contained chlorine supply."

**4. "in continuous communication with substantially the entire amount of chlorine supply"**

The phrase "in continuous communication with substantially the entire amount of chlorine supply" is quite similar to the phrase discussed immediately above. Cecil's draws on this similarity to propose that it means exactly the same thing that Cecil's proposed "in constant fluid communication with substantially the entire contained chlorine supply" meant. Chaffin's proposition for this term differs little from his proposition for the above term as well.

In light of the recognized parallels between this phrase and the one discussed in Section 3 *supra*, the Court construes this phrase in an analogous way to the construction of the above phrase: "allowing access at all times to substantially the entire amount of chlorine supply."

**5. "the volume of chlorine drawn from the chlorine supply canister during a period of continuous sewage effluent recirculation varies with the duration period of continuous sewage effluent recirculation"**

Cecil's argues that the key to this phrase is that chlorine is drawn from the supply canister "regardless of the duration period" of recirculation. Dkt. No. 22 at 37. Chaffin argues that the phrase means that "the longer the sewage effluent is recirculated without stopping, the greater the volume of chlorine that is dispensed." The distinction between these two interpretations is a fine one, if it exists at all. If chlorine is drawn from the supply canister regardless of the duration of

7

recirculation, then it follows that the longer the recirculation runs, the more chlorine is dispensed (up to the limit of how much chlorine is in the supply canister, of course).

That said, Chaffin's formulation seems closer to the mark. The difference is, as with the proposed constructions of "venturi chamber," one of focus: Cecil's' construction focuses on *whether* chlorine is drawn, while Chaffin's construction points to *how much* chlorine is drawn. The language of the claim, however, describes *how much* chlorine is drawn: the amount "varies with the duration . . . of . . . recirculation." Chaffin's construction, then, is more in keeping with the actual language of the claims.

Thus, the Court adopts Chaffin's proposed construction: "the volume of chlorine drawn from the chlorine supply canister during a period of continuous sewage effluent recirculation varies with the duration period of continuous sewage effluent recirculation" means "the longer the sewage effluent is recirculated without stopping, the greater the volume of chlorine that is dispensed."

## CONCLUSION

The Court construes the following claim terms from the '912 patent as follows:

(1) "venturi chamber" means "a volume in a tubular fluid pathway in which suction is produced due to a constriction."

(2) "recirculation pipe" means "a tubular fluid pathway for returning a fluid to a starting point, with at least a portion of that pathway being downstream from the venturi;"

(3) "in constant fluid communication with substantially the entire contained chlorine supply" means "allowing liquid or gas access at all times to substantially the entire contained chlorine supply;"

(4) "in continuous communication with substantially the entire amount of chlorine supply" means "allowing access at all times to substantially the entire amount of chlorine supply;"

(5) "the volume of chlorine drawn from the chlorine supply canister during a period of continuous sewage effluent recirculation varies with the duration period of continuous sewage effluent recirculation" means "the longer the sewage effluent is recirculated without stopping, the greater the volume of chlorine that is dispensed."

It is so ORDERED.

Signed this 11th day of February, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE